## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NICOLE FIELDS,** | Civ. No. 2:12-04092 (WJM) |
| **Plaintiff,** | |
| v. | **OPINION** |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY,** | |
| **Defendant.** | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Nicole Fields suffers from a seizure disorder.  Fields brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final determination by the Commissioner of Social Security (the "Commissioner") denying her applications for child's insurance benefits and supplemental security income benefits.  For the reasons that follow, the Commissioner's decision is **AFFIRMED**.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

On March 29, 2006, a 19 year old Nicole Fields reported to the emergency room complaining of seizures.  Tr. 199, ECF No. 7.  On June 19, 2006, a neurologist determined that Fields likely had "generalized seizures probably of complex partial type."  *Id.* at 200.  Fields was started on seizure medications.  *Id.* at 208.  In April 2007, Fields ran out of her medicines and proceeded to experience a seizure.  *Id.* at 227.  In November 2007, Fields again stopped taking her medicines, this time due to lack of insurance.  *Id.* at 245.  Again, Fields suffered a seizure.  *Id.*

Two years later, in November 2009, Fields experienced another seizure.  *Id.* at 301.  Fields's neurologist, Dr. Tao, noted that the seizure "probably" occurred because Fields had not taken her medicine.  *Id.*  Dr. Tao also noted that prior to the episode, Fields's seizures had been "well controlled."  *Id.* at 299.  Dr. Tao noted that Fields had not had a seizure for several years.  *Id.* at 301.

On June 4, 2008, Fields applied for child's insurance benefits based on her seizures. *Id.* at 14. In her application, she alleged a disability onset date of March 29, 2006. *Id.* On May 8, 2008, Fields applied for supplemental security income, again alleging a disability onset date of March 29, 2006. *Id.* Fields's claims were denied on August 12, 2008, and then again on reconsideration on February 26, 2009. *Id.*

On June 22, 2010, Administrative Law Judge Richard L. De Steno ("the ALJ") held a hearing on Fields's application. At the hearing, Fields admitted that she had not taken her medicines in the past. *Id.* at 50. But she testified that she was currently taking her medicines, and that she continued to experience seizures. *Id.* at 50-52.

At the hearing, the ALJ also took testimony from Julie Andrews, a vocational expert certified by the Social Security Administration. *Id.* at 55-63. Andrews has testified in social security disability cases since July 1995, and Fields stipulated that she could testify as an expert in her case. *Id.* at 55-56.

At the hearing, Andrews was asked to consider a hypothetical job applicant (the "Hypothetical Applicant"). The Hypothetical Applicant was Fields's age, and she had Fields's education and lack of relevant work experience. *Id.* at 56. Additionally, the Hypothetical Applicant was able to perform the following tasks: lift and carry objects weighing up to 20 pounds; frequently lift and carry objects weighing up to 10 pounds; sit, stand, and walk up to six hours in an eight-hour day; push and pull; and control her arms and legs. *Id.* As the ALJ noted, these tasks "essentially" comprised "light work" under the social security regulations. *Id.* Finally, the Hypothetical Applicant could not be exposed to heights or use heavy machinery. *Id.* Andrews testified that there were three jobs available in the northern New Jersey economy that could be performed by the Hypothetical Applicant: small product assembly, housekeeping, and agricultural produce work. *Id.* at 56-57.

Several weeks after the hearing, the ALJ issued his decision. The ALJ found that Fields had a seizure disorder, but he also found that Fields's disorder was not as debilitating as Fields claimed. *Id.* at 18-22. The ALJ rejected Fields's testimony that she suffered monthly seizures. *Id.* at 22. Instead, the ALJ credited Dr. Tao's treatment notes, which indicated that Fields's seizures were well controlled when she took her medicines. *Id.* The ALJ concluded that Fields could perform the work that was performed by the Hypothetical Applicant. *Id.* at 19-22. Finally, the ALJ credited Andrews's testimony and concluded that Fields was not disabled because she was capable of performing jobs that existed in significant numbers in the national economy. *Id.* at 24.

## II.    LEGAL STANDARD

Fields's claims of disability are evaluated in accordance with a five-step evaluation process.  20 C.F.R. § 404.1520; *see also Roderick v. Comm'r of Social Sec.*, 322 Fed. Appx. 117, 120 (3d Cir. 2009) (five-step evaluation process set forth in 20 C.F.R. § 404.1520 applies to child's insurance benefit claims).  In the first step, the Commissioner determines whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe."   20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in appendix 1 to subpart P of part 404 of chapter 20 in the Code of Federal Regulations ("Appendix 1").  20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four.   20 C.F.R. § 404.1520(d).   Before the fourth step, the Commissioner determines the claimant's residual functional capacity ("RFC"), which is essentially her ability to work.  20 C.F.R. § 404.1520(e).  In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the RFC to perform past relevant work.  20 C.F.R. §§ 404.1520(e)-(f).  The claimant bears the burden of proof at each of these first four steps.

At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing "other work" that is available in the national economy.   20 C.F.R. § 404.1520(g); 20 C.F.R. § 404.1512(f).  If a claimant has non-exertional limitations, the Commissioner must take testimony from a "vocational expert or [receive] other similar evidence, such as learned treatise [in order to] . . . establish that there are jobs in the national economy that someone with the claimant's combination of impairments can perform."  *Sykes v. Apfel*, 228 F.3d 259, 273 (3d Cir. 2000).

For purposes of this appeal, the court's review of legal issues is plenary.  *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). The ALJ's factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings."   *Sykes*, 228 F.3d at 262. Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla."   *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (internal quotation and citation omitted).   "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Id.* (internal quotation and citation omitted).

## III.   THE ALJ'S DECISION

At step one, the ALJ concluded that Fields had not engaged in substantial gainful activity since her alleged disability onset date of March 29, 2006.  Tr. 18.  At step two, the ALJ concluded that Fields's seizure disorder was a severe impairment.  *Id.*  At step three, the ALJ concluded that Fields's impairments did not meet or medically equal one of the impairments listed in Appendix 1.  *Id.* at 19.  Before moving to step four, the ALJ concluded that Fields could perform light work (with some exceptions).  *Id.* at 19-22.  Since Fields had no relevant past work, the ALJ skipped step four and proceeded to step five.  At step five, the ALJ concluded that Fields was not disabled because she could perform jobs that existed in significant numbers in the national economy.  *Id.* at 23-24.

## IV.   DISCUSSION

Fields does not challenge the ALJ's analysis in steps one through four.  Instead, Fields makes three arguments for why the ALJ did not carry his burden at step five.  Fields's arguments lack merit.

Fields's first argument concerns Andrews's expertise.  Fields argues that the ALJ should not have relied on Andrews's testimony because Andrews "is not an expert in placing persons with seizure disorders."  Pl.'s Br. 18, ECF No. 10.  But Fields stipulated that Andrews was a vocational expert.  If Fields wished to challenge Andrews's expertise, she should not have stipulated to it.

Fields's next argument concerns Andrews's testimony about the jobs available to someone with Fields's RFC.  Fields argues that Andrews's testimony had little bearing on Fields's situation for two reasons.  First, Fields argues that Andrews's testimony did not account for an employer's willingness to hire someone with seizures.  This argument misses the mark.  The question facing the ALJ was whether Fields could perform a certain type of job available in the national economy, not whether an employer would hire Fields given her seizure disorder.   20 C.F.R. § 404.1566(c).   Second, Fields argues that Andrews's testimony about available jobs did not account for the fact that people with seizures need special accommodations in the workplace.  At steps one through four, the ALJ found that Andrews's seizures were well controlled when she took her medications.  Fields does not challenge this conclusion.  Accordingly, Fields makes no showing that she would need special accommodations because of her seizures.

Fields's third argument concerns an ALJ's obligations under *Cotter v. Harris*, 642 F.2d 700 (3d Cir. 1981), which requires ALJs to give reasons for rejecting probative evidence.  Fields maintains that *Cotter* required the ALJ to

explain why he relied on Andrews's expertise.  As discussed above, Andrews was qualified as an expert pursuant to stipulation.  The ALJ was under no obligation to address the wisdom of that stipulation in his opinion.

## V.      CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**. An appropriate Order follows.

_____/s/ William J. Martini_____
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: June 14, 2013**